IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CLARA ABRAMS SANTIAGO

**Plaintiff(s)**

v.                                         CIVIL NO. 98-1696 (JAG)

HACIENDA CARABALÍ, et al

**Defendant(s)**

## OPINION AND ORDER

Plaintiff Clara Abrams ("Abrams") brought suit against defendants Horse Rental, Inc., d/b/a Hacienda Carabalí ("Carabalí"), National Insurance Company, and three unnamed insurance carriers, pursuant to Articles 1802, 1803 and 1805 of the Puerto Rico Civil Code.  See 31 L.P.R.A. §§ 5141, 5142, 5144.  Defendants have moved for summary judgment, contending that Abrams cannot prevail as a matter of law.  Upon review of the record, the Court denies the motion.

### FACTUAL BACKGROUND

Abrams alleges that, while riding a horse as a business invitee at Carabalí, the horse threw her and she fell with great force on the rocky ground.  She contends that she was thrown off because the horse's legs buckled when it stumbled with a large rock.  She claims that defendants, as the owners of the horse, are



AO 72A
(Rev.8/82)



Civil No. 98-1696(JAG)                                                        2

strictly liable under Article 1805 of the Puerto Rico Civil Code, or, alternatively, for negligence, under Articles 1802 and 1803, inasmuch as Carabli allegedly failed to maintain the horseback riding trails properly.

For their part, defendants argue that Abrams signed a lease contract to rent the horse. By doing so, she assumed the risks of horseback riding and released Carabalí of any liability for her accident. Defendants further argue that Abrams has not demonstrated that Carabalí's actions were negligent or proximately caused her injuries.

### SUMMARY JUDGMENT STANDARD

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A properly supported motion can be survived only if the non-moving party shows that a trial worthy issue exists. The party

AO 72A
(Rev.8/82)

Civil No. 98-1696(JAG)                                                    3

opposing the motion cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every controversy is sufficient to preclude summary judgment. The fact has to be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of a suit. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Consequently, in order to defeat the motion, the party opposing summary judgment must present competent evidence supporting its position. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Civil No. 98-1696(JAG)                                                    4

## STRICT LIABILITY UNDER ARTICLE 1805

Article 1805 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5144, establishes strict liability for damages caused by an animal. Under article 1805, the possessor of an animal, or a person who uses it, is liable for any damages it causes. This liability ceases only in the case when damage results from *force majeure* or from fault of the person who suffers the damage. See P.R. Laws Ann. tit. 31, § 5144.

Article 1805 "is not a mere procedural presumption of fault or negligence, but a special liability imposed by law." Woods-Leber v. Hyatt Hotels of P.R., 951 F. Supp. 1028, 1034 (D.P.R. 1996) (citing Serrano v. López, 79 P.R.R. 922, 927 (1957)). To prevail, the plaintiff has to establish that the defendant owned or otherwise used the animal. "No one is liable in damages for injuries by an animal which he does not own, harbor, or control...." Id. (citing Redinger v. Crespo, 18 P.R.R. 106, 109 (1912)).

Defendants contend that Art. 1805 does not apply here. They argue that the Puerto Rico Supreme Court decision in Serrano, 79 P.R.R. at 928-29 governs this controversy. In Serrano, the Court stated that when an animal owner lends (or loans) the animal to another person, it is the borrower (or lessee) who, as a rule, "possesses and uses" the animal for purposes of article 1805. As

AO 72A
(Rev.8/82)

a result, the <u>Serrano</u> Court concluded, the owner could not be held liable under the strict liability statute. <u>Id.</u>

In a post-<u>Serrano</u> case specifically involving horse rentals, however, the Puerto Rico Supreme Court distinguished its holding in <u>Serrano</u>. See <u>Santos v. Ramos Cobián</u>, 87 D.P.R. 472, 476-77 (1963). The <u>Santos</u> Court held that, in the context of horse rentals, someone who rents a horse - that is, someone who pays to obtain permission to use the horse for recreational purposes, and for a brief period of time - does not "possess" it for purposes of article 1805. <u>Id.</u>

To state a claim under article 1805, Abrams must prove that Carabalí owned, harbored, or used the horse she rode. Therefore, she can defeat Carabalí's motion for summary judgment by submitting evidence that could permit a reasonable jury to conclude that Carabalí owned or used the horse. See <u>Woods-Leber</u>, 951 F. Supp. at 1035. She has submitted sufficient evidence to defeat Carabalí's motion. There is enough evidence for a jury to find Carabalí liable under Article 1805.

## LIABILITY FOR NEGLIGENCE UNDER ARTICLE 1802

Abrams argues that defendants breached their duty to maintain the riding trails in proper condition. Abrams also argues that her accident was foreseeable, insofar as Carabalí knew, or should have

known, that the trail's dangerous condition could cause an accident.

Article 1802 states that "[a] person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. To state a claim under Art. 1802, the plaintiff must establish: 1) that the act or omission was negligent or wrongful; 2) a causal relation between the damages and defendants' act or omission; and 3) damages. Hernández v. Fournier, 80 P.R.R. 94, 97 (1957); De-Jesús Adorno v. Browning Ferris of P.R., 160 F.3d 839, 842 (1st Cir. 1998).

Here, where Abrams alleges that Carabalí failed to maintain the trails in good condition, we are dealing with an omission. Abrams alleges that defendants' negligence in maintaining the riding trials created the dangerous condition that led to her accident. She argues that the track was rocky and difficult to maneuver. Defendants, on the other hand, claim that they maintained the trails properly. There is an issue of material fact as to the trails' condition on the date of the accident. A jury, not a judge, must determine whether defendants failed to satisfy their duty of care.

Abrams has submitted enough evidence to permit a jury to conclude that her accident would have been reasonably foreseeable

Civil No. 98-1696(JAG)                                                    7

to a person in defendants' situation. There are depositions (of Abrams' and of eyewitnesses), for example, that state the poor condition of the trail at the time of the accident. (Docket 28, Plaintiff's Exhibits II, IV, V, VIII). Thus, it would be possible for the jury to find a causal relationship between the defendants's omission and Abrams's fall.

### THE ASSUMPTION OF RISK DOCTRINE

Defendants allege that the affirmative defense of assumption of risk exonerates them from liability. The doctrine of assumption of risk applies if the plaintiff, expressly or impliedly, consents to expose himself to suffer damages as a consequence of a particular risk created by the defendant. In that event, the plaintiff cannot recover for her injuries. To prevail, defendants must prove that plaintiff acknowledged and voluntarily assumed the risk. See generally Carlos J. Irrizary Yunqué, Responsabilidad Civil Extracontractual, [Torts] 429-434 (4d ed. 2000); See Viñas v. Pueblo Supermarket, 86 P.R.R. 31, 34-35 (1962).

The phrase "assumption of risk" has three different modalities: 1) when both parties agree not to bring a claim, even though one party incurs in negligence; 2) when having had or not a duty toward the plaintiff, the defendant is not liable because he has not incurred in fault or negligence, (primary sense); 3) when the plaintiff has assumed the risk created by the breach of the

Civil No. 98-1696(JAG)                                                           8

duty that defendants had toward him, (secondary sense). <u>Viñas v. Pueblo Supermarket</u>, 86 P.R.R. 31, 34-35 (1962).

Defendants allege that Abrams knowingly and willfully assumed the inherent risks of horseback riding, under the primary sense modality, which implies that they were not negligent whether they owed or not the Plaintiff a duty of care. Horse riding undoubtedly has the inherent risk that the rider will fall off the horse and suffer injuries. It is necessary to look at the facts of the specific risk to which the rider was exposed. <u>Id.</u>

The fact that Abrams had knowledge of the trail's rocky condition does not release Carabalí of its duty of care to maintain the trail properly. <u>Urbino v. San Juan Racing</u>, 141 P.R. Dec. 210, 218 (1996). Abrams had the right to expect that the facilities were safe and that Carabali maintained the trails properly. <u>Id.</u> The plaintiff has the burden of proffering evidence that would raise a question of fact that the fall was caused not by an inherent risk, but rather by a risk that was atypical, and thus not inherent to the sport of horseback riding. Abrams alleges that the fall occurred because defendants were negligent in maintaining the trail, and thereby created the dangerous condition that caused the accident. (Docket 28, Plaintiff's Statement of Contested Facts at 3). A jury could conclude that an improperly maintained trail is not an inherent risk of horseback riding.

Carabali points to the language in the lease contract to argue that Abrams assumed the risks of injury upon signing. The operative clause (clause number 9) reads as follows: "The user of the facilities and the horses owned by Horse Rental, Inc. acknowledge the risks which riding a horse involve and assumes all the risks that said activity entails." Since Abrams signed a typical contract of adhesion, the Court construes it liberally in favor of the non-drafting party. See, e.g., Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of P.R., Inc., 167 F.3d 1, 7 (1st Cir. 1999). Furthermore, when interpreting contracts of adhesion, exclusion clauses are strictly construed against the drafter. Id. Here, the contract language is not altogether clear or dispositive of the inquiry, as Carabali suggests. Strictly interpreted in Abrams' favor, Abrams agreed to release Carabali from all the risks "*that said activity entails.*" The activity - horseback riding - entails certain risks, to be sure, but a negligently maintained trail probably would not seem to rank among the risks that a horseback rider could reasonably expect.

Similarly, the use of the conjunctive "and" in clause 10 of the lease contract ("...and that occurs because of the breach of the rules and conditions of the contract") dooms Carabali's principal claim that, read together, clause 9 and 10 should release it from liability. It is at the very least a contested fact

Civil No. 98-1696(JAG)                                              10

whether Abrams breached the rules and conditions of the contract, and that dispute alone prevents the Court from dismissing Abrams' claim on this score.

Accordingly, the Court denies Carabali's request to dismiss Abrams' negligence claim at this stage.

### CONCLUSION

In the light of the foregoing, the Court denies defendants' motion for summary judgment.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of September, 2001.

JAY A. GARCIA-GREGORY
U.S. District Judge